UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BETH S. GATES, | ) |
| Plaintiff, | ) |
| | ) Case No. C06-0582-TSZ-JPD |
| v. | ) |
| | ) |
| LINDA S. McMAHON, Acting Commissioner, Social Security Administration,[1] | ) REPORT AND RECOMMENDATION |
| Defendant. | ) |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Beth S. Gates appeals the final decision of the Commissioner of the Social Security Administration ( "Commissioner") that denied her application for disability benefits under Title II of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the decision be affirmed.

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of the Social Security Administration. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon is substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

REPORT AND RECOMMENDATION
PAGE -1

## II.  FACTS AND PROCEDURAL HISTORY

Plaintiff is a fifty-two year old woman with a high school education. AR 159, 510. Her past work experience includes employment as an assistant manager at a convenience store, a sandwich maker, and a cashier. AR 20, 163-70. She last worked at a McDonald's restaurant, a job that she held for three years, when, in April 1999, she ruptured her plantar fascia. AR 102. Although she tried to return to work at the McDonald's restaurant in a modified sedentary position, she was unsuccessful.

She filed for disability on August 9, 2000, alleging disability from October 1, 1999. Her claim was denied on October 5, 2000. She sought no further review of that determination. The plaintiff filed a second application on August 8, 2003, which sought reopening of the earlier denial and alternatively, benefits from October 6, 2000, forward. The ALJ determined that the issue of disability prior to October 5, 2000, was addressed appropriately in the initial determination and the doctrine of administrative finality barred the reopening of this determination. The plaintiff has not appealed this decision.

On May 23, 2005, an administrative hearing was conducted. AR 505. On December 20, 2005, the ALJ issued a decision finding plaintiff not disabled through December 31, 2001, her date last insured. AR 15-21, 62. He found that although plaintiff was unable to perform her past relevant work and had no transferable skills, there were other types of sedentary work plaintiff could perform that existed in significant numbers in the national economy. AR 21.

Plaintiff appealed the decision, but the Appeals Council denied her request for review. AR 6-8. The ALJ's December 20, 2005, decision therefore serves as the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 422.210.

## III.  JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

## IV. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted).

## V. EVALUATING DISABILITY

As the claimant, Ms. Gates bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled only if her impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

REPORT AND RECOMMENDATION
PAGE -3

01  20 C.F.R. § 416.920.  At step one, the claimant must establish that she is not engaging in any
02  substantial gainful activity.  20 C.F.R. § 416.920(b).  If the claimant establishes that she has
03  not engaged in any substantial gainful activity, the Commissioner proceeds to step two.  At
04  step two, the claimant must establish that she has one or more medically severe impairments or
05  combination of impairments that limit her physical or mental ability to do basic work activities.
06  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. § 416.920(c).
07  If the claimant does have a severe impairment, the Commissioner moves to step three to
08  determine whether the impairment meets or equals any of the listed impairments described in
09  the regulations.  20 C.F.R. § 416.920(d).  A claimant who meets or equals one of the listings
10  for the required twelve month duration requirement is disabled.  *Id.*

11  When the claimant's impairment neither meets nor equals one of the impairments listed
12  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's
13  residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Here, the Commissioner
14  evaluates the physical and mental demands of the claimant's past relevant work to determine
15  whether the claimant can still perform that work.  20 C.F.R. § 416.920(f).  If the claimant is
16  not able to perform her past relevant work, the burden shifts to the Commissioner at step five
17  to show that the claimant can perform some other work that exists in significant numbers in
18  the national economy, taking into consideration the claimant's RFC, age, education, and work
19  experience.  20 C.F.R. § 416.920(g); *Tackett*, 180 F.3d at 1100.
20  If the Commissioner finds the claimant is unable to perform other work, then the claimant is
21  found disabled and benefits may be awarded.

## VI. DECISION BELOW

On December 20, 2005, the ALJ issued a decision finding:

1.  The claimant met the disability insured status requirements of the Act on October 6, 2001 (sic), the alleged disability onset date, and she has sufficient quarters of coverage to remain insured only through December 31, 2001.

REPORT AND RECOMMENDATION
PAGE -4

2. The claimant did not engage in substantial gainful activity during the time relevant to this matter.

3. During the time that claimant was last insured, she had right plantar fascial tear; iliotibial band syndrome; and obesity. These impairments were severe, but they did not meet or equal the criteria of any of the impairments listed in Appendix 1.

4. The claimant's statements concerning her impairments and limitations are not entirely credible.

5. At the time she was last insured the claimant had the residual functional capacity to perform sedentary work. She could stand/walk 2 hours in an 8-hour workday and sit for 6 hours in a workday. She needed to avoid concentrated exposure to cold and hazards.

6. The claimant cannot return to her past relevant work.

7. The claimant was born on . . . , 1954, and she has at least a high school education.

8. Based on the claimant's age, educational background, work experience, and residual functional capacity, 20 C.F.R. §404.1569 and rules 202.21 or 201.22 of Appendix 2 direct a conclusion that the claimant was not disabled on and before the date that she was last insured.

9. On and before the date that she was last insured, the claimant was not under a disability as defined in the Social Security Act.

AR 21.

## VII.  ISSUES ON APPEAL

There are three primary issues raised by the plaintiff in this appeal:

1. Did the ALJ Err by Making an Adverse Credibility Determination?

2. Did the ALJ Err in His Evaluation of Mental Claims of Depression and Claustrophobia?

3. Did the ALJ Err in His Evaluation of Physical Impairments of Tennis Elbow, Hand Limitation, and the Plaintiff's Ability to Sit and Stand?

REPORT AND RECOMMENDATION
PAGE -5

## VIII.  DISCUSSION

A.  <u>The ALJ Did Not Err By Making An Adverse Credibility Determination.</u>

According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

 The ALJ determined that the plaintiff had a "lack of motivation for anything, declining to make any effort to lose weight despite her doctor's advice, or to address her claustrophobic symptoms. She also has a marginal lifelong work record. These factors

01  suggest that her continued unemployment may be related to a lack of interest and motivation
02  in working, rather than her symptoms." AR 19.
03  A claimant's lack of motivation and follow-through with recommended treatment are
04  proper subjects of inquiry when considering the credibility of symptom testimony.
05  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). Inability to lose weight cannot
06  be the basis for denial of benefits. *Hammock v. Bowen,* 879 F.2d 498, 503 (9th Cir. 1989).
07  However, the failure to treat her obesity and claustrophobia can be evidence of self-
08  limitation, which is relevant to an adverse credibility determination. *Osenbrock,* 240 F.3d at
09  1167.
10  The plaintiff objects to the ALJ's finding, arguing that the ALJ ignored evidence that
11  limited the plaintiff's ability to exercise, and that she mitigated her claustrophobia by trying
12  to prevent herself from being in positions in which her claustrophobia would impact her. Pl.
13  Reply, Dkt. 21, pp. 9, 10.
14  There are several problems with the plaintiff's contentions. First, the ALJ did not
15  indicate that the plaintiff had to lose weight. He mentioned her failure to lose weight only in
16  the context of her lack of motivation to work. Second, the ALJ's analysis to support his
17  adverse credibility determination was not restricted to these two issues. Instead, the ALJ
18  also noted that the plaintiff went shopping, performed chores around the house, including
19  some cleaning, laundry, and gardening. She was also able to ride a stationary bike and other
20  activities consistent with performing sedentary to light type of work. AR 19. The ALJ found
21  that her daily living activities were not entirely consistent with the continuous and extreme
22  pain plaintiff alleged. *See Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).
23  Third, with respect to claustrophobia, Dr. Hakeman noted, "I doubt psychotherapy for
24  her claustrophobia would be necessary nor particularly effective unless the patient were
25  particularly motivated to change her symptoms. As she has not found it limiting, nearly
26  always able to modify the situation in order to avoid symptoms, this treatment is not

REPORT AND RECOMMENDATION
PAGE -7

01 recommended." AR 427. In a Psychiatric Review Technique Report dated January 9, 2003,

02 a psychologist, Dr. Anita Peterson, reported:

> Alleges claustrophobia and depression, with no prior MH hx. Since WRI she has become discouraged and frustrated and some vegatative sx are reported. Severe signs are not observed and affect is full range. MER is consistent in noting that claustrophobia has caused her no difficulties in her life, since she has been easily able to avoid situations that might trigger sx. . . . No problems with CPP in MER or ADLs: CL is alert, MSEs WNL, reads avidly, plays games on PC. There are no problems with social interactions: She and husband socialize regularly, seeing friends, attending movies and eating out. She is pleasant, cooperative, appropriate and articulate in MER.
>
> There are inconsistencies in MER that raise a question about credibility. She denies hx panic to neurologist 9/01, but reports several panic attacks due to claustrophobia in 7/02. She clearly will not work in movie theater ticket booth as DVR wantes her to, but for SSI purposes she is non-severe.

11 AR 452.

12 Finally, as noted above, the ALJ noted that the plaintiff's "marginal lifelong work

13 record" suggested that her continued unemployment may be related to a lack of interest and

14 motivation in working, rather than her symptoms. AR 19. The plaintiff does not object to

15 this characterization of her work record, and it is supported by the record. AR 88. This

16 factor can be an appropriate reason for discounting the plaintiff's credibility. *Thomas,* 278

17 F.3d at 959.

18 The ALJ provided specific, clear and convincing reasons for his adverse credibility

19 determination. Accordingly, the adverse credibility determination must be sustained.

20
21     B.    <u>The ALJ Properly Evaluated the Evidence Regarding Claustrophobia and Depression</u>.

22 Plaintiff asserts that the ALJ erred by failing to find the plaintiff's claustrophobia and

23 depression to be severe impairments. In order to receive benefits, the plaintiff was required to

24 establish that the current disability began on or prior to the date last insured. *Tidwell v. Apfel,*

25 161 F.3d 599, 601 (9th Cir. 1999).

26

REPORT AND RECOMMENDATION
PAGE -8

01    In April 2000, the plaintiff was seen by a psychiatrist, Dr. Andrew Pauli, for an
02 independent medical exam. After the exam, Dr. Pauli concluded that the plaintiff did not
03 meet the criterial for major depression. "As a matter of fact, she doesn't really present as
04 depressed, but rather discouraged with her current situation." AR 311. He recognized that
05 the plaintiff was morbidly obese and that this contributed to her discouragement, but because
06 issues of weight control had been of a long-standing nature, "taking on a weight loss program
07 has not become very real or a priority for her." *Id.* Medication to assist in sleeping and
08 involvement in a weight loss treatment program was recommended. AR 312.

09    The plaintiff contends that the ALJ improperly evaluated the medical opinions of Dr.
10 Hakeman and Dr. McKinney, two psychiatrists who examined the plaintiff. In July 2002,
11 seven months after the December 31, 2001, date last insured, Dr. Hakeman diagnosed the
12 plaintiff with claustrophobia as well as depression NOS, with a GAF of 55. AR 18. As to
13 claustrophobia, Dr. Hakeman noted that although the plaintiff stated she suffered from
14 claustrophobia, she was able to deal with it for certain periods. She could, for example, ride
15 in an elevator, fly in an airplane, and go to a movie. AR 429. The plaintiff said she could do
16 this because she knew she would be exposed to it for just a short time. *Id.* Dr. Hakeman also
17 stated that medication could decrease her symptoms, but that it was not necessary as the
18 plaintiff was successful in avoiding the few situations that were difficult for her. AR 427.
19 She noted "I do not believe that she could work in a small, enclosed space, such as a small
20 movie ticket window or a tollbooth. At this point I do believe that she can do cashiering
21 work outside or an enclosed space and within the restrictions for sitting as stated repeatedly
22 in her IMEs and by Dr. Stuart." AR 427.

23    As to her depression NOS, Dr. Hakeman concluded that the plaintiff had some "mild
24 generalized anxiety disorder symptoms." *Id.* Her recommendation was for some medication
25 that would assist in helping the plaintiff to sleep. *Id.* As noted above, she concluded that the
26 plaintiff was able to return to cashiering work subject to restrictions set forth above.

REPORT AND RECOMMENDATION
PAGE -9

01      Dr. McKinney saw the plaintiff in January 2003, just over one year after her date last
02 insured. AR 456. Dr. McKinney had follow-up visits with the plaintiff and then the plaintiff
03 began to see Dr. Lackheni after Dr. McKinney moved out of the area. AR 461. In January,
04 Dr. McKinney stated that the plaintiff self-reported being irritable and depressed. AR 457.
05 She reported that the plaintiff's mental status examination was normal, but assigned the
06 plaintiff a GAF of 50,[2] and indicated she could benefit from psychiatric treatment, both
07 medication and management. AR 458. On a follow-up appointment in March, Dr.
08 McKinney again assigned a GAF of 50. AR 458. Subsequently, Dr. McKinney prescribed
09 Effexor for the plaintiff. After taking the Effexor, on August 6, 2003, Dr. Lackheni reported
10 that the plaintiff showed benefit from the psychiatric treatment, and reported a GAF of 60.
11 AR 463.

12      The ALJ considered the report of Dr. McKinney, and agreed with part of it, but also
13 found that the GAF assessment was not consistent with the remainder of the doctor's report
14 and findings, which, as noted above showed normal psychomotor activity, speech within
15 normal limits and thought process being goal directed. This inconsistency provides a
16 legitimate basis to reject the lower GAF assessment. *Nguyen v. Chater,* 100 F.3d 1462, 1469
17 (9th Cir. 1996).

18      The opinions of the State agency psychologists also supported the non-severe
19 determinations regarding claustrophobia and depression. Non-examining consulting
20 physicians reports can serve as substantial evidence if they are supported by and consistent
21 with other evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035 (9th Cir. 1995). The

---

[2] A GAF of 50 indicates serious symptoms or an serious impairment in social, occupational, or school functioning. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th TR. Ed. 2000). A GAF of 60 indicates an individual with some moderate symptoms (e.g., flat effect, circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

REPORT AND RECOMMENDATION
PAGE -10

State agency "Psychiatric Review Technique" (PRT) report identified the plaintiff's claustrophobia and depression, but also noted that the plaintiff had no prior history of mental health treatment and her claustrophobia "has caused her no difficulties in her life." AR 452. The PRT also referenced evidence in the record showing the plaintiff had no problems with social interactions and no difficulties with concentration, pace, or persistence. Based on this assessment, the State psychologists concluded that the plaintiff's depression and claustrophobia were non-severe under the Regulations. 20 C.F.R. §§ 404.1508 and 404.1520a. As a result, there is substantial evidence in the record that supports the ALJ's opinion that depression and claustrophobia were non-severe impairments.

The plaintiff also argued that the ALJ's failure to fill out and attach his own PRT required remand. As pointed out by the Commissioner, an ALJ, however, is no longer required to complete a PRT form, as long as he performs the special analysis set forth in 20 C.F.R. § 404.1520 (e)(2). The ALJ did so by incorporating by reference the State psychologists' PRT assessment and finding the impairments to be non-severe based on the absence of functional limitations or only mild limitations. AR 18.

The analysis by the ALJ of the medical opinions and the conclusions drawn therefrom relating to depression and claustrophobia is supported by substantial evidence in the record and accordingly, must be affirmed.

    C.    <u>The ALJ Properly Evaluated the Evidence Relating to Physical Impairments of Tennis Elbow, Hand Limitations, and the Ability to Sit and Stand.</u>

The plaintiff also claims that the ALJ erred with respect to his findings relating to physical impairments by failing to find that the plaintiff had a severe impairment of tennis elbow and other hand impairments, and by being non-specific about the plaintiff's ability to sit and stand. Neither argument has merit.

The onset of the elbow and hand limitations did not surface until 2003, when the plaintiff was involved in retraining efforts. AR 19. She was attempting to improve on

REPORT AND RECOMMENDATION
PAGE -11

keyboarding skills, when this impairment surfaced. This was long after her date last insured. The ALJ did not err in his analysis relating to elbow and hand limitations.

The plaintiff also argues that the ALJ failed to consider limitations imposed by her need to alternate sitting and standing. The ALJ found that the plaintiff was capable of sedentary work. In his RFC, the plaintiff was limited to jobs in which she could stand or walk no more than two hours a day and in which she could sit for six hours per workday. AR 21. Plaintiff contends that this ignored the opinion of Dr. Andrews and that Social Security Ruling 96-9 requires greater specificity in sitting/standing/and walking issues.

Plaintiff asserts that Dr. Andrews opined that the plaintiff would be limited to jobs in which she needed to be in a sitting position 90% of the time, rather than alternate sitting and standing. Social Security Ruling 96-9 provides that when an individual has the need to alternate sitting and standing and the need cannot be accommodated by only means of scheduled breaks and a lunch period:

> [t[he full range of sedentary work will be eroded. The extent of any erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7.

In her argument, the plaintiff does not accurately set forth Dr. Andrews' opinion. He concluded that the plaintiff's limitations in this regard referred to a specific job (movie theater) rather than a general observation, and that an employer should allow her to "sit 90% of the time, rather than alternate sitting and standing *and cleaning*." AR 352 (emphasis added). Dr. Andrews did not assess the plaintiff with ongoing limitations regarding prolonged sitting.

Dr. Hawley opined that the plaintiff would be unable to work at jobs that required more than 1-2 hours of standing in a workday, or which would require frequent rising from

REPORT AND RECOMMENDATION
PAGE -12

01 the sitting position during the workday. AR 408-09. After review, the ALJ concluded that
02 Dr. Hawley's medical opinion "suggests that the claimant was capable of a broad range of
03 work at least at the sedentary level," which he also concluded was consistent with the
04 medical findings and observations. The ALJ addressed these limitations in his RFC by
05 limiting plaintiff to sedentary jobs, in which she could stand/walk for up to 2 hours a day and
06 sit for six hours per workday. AR 21. He also found that her daily activities of shopping,
07 chores around the house, spending much of her time sitting, gardening, riding a stationary
08 bike, and visiting were consistent with a sedentary type of work. AR 19. Finally, he cited a
09 DDS physician report indicating that the plaintiff was able to perform sedentary work with
10 occasional postural movements, including standing and walking two hours in an eight hour
11 workday, and sitting for six hours. AR 17, 448. When considering possible postural and
12 other physical limitations, the ALJ concluded that these would not significantly erode the
13 world of sedentary work. AR 19, 20.

14 The ALJ properly evaluated all of the plaintiff's impairments and determined that she
15 was capable of performing sedentary work. *Ellis v. Barnhart,* 392 F.3d 988, 997 (8th Cir.
16 2005).

## IX.  CONCLUSION

18 The role of this Court in reviewing the ALJ decision is limited. The ALJ is responsible
19 for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.
20 *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to
21 more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.
22 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted). While the
23 interpretation of the evidence offered by the plaintiff would have been appropriate, it simply
24 cannot be said that the plaintiff's interpretation is the only rational interpretation. *Rollins v.*
25 *Massanari*, 261 F.3d 853, 57 (9th Cir. 2001). For the reasons set forth above, the Court

recommends that the decision of the Commissioner be affirmed.   A proposed Order accompanies this Report and Recommendation.

DATED this 9th day of February, 2007.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -14