UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BETH S. GATES,<br><br>            Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>            Defendant. | No. C06-582Z<br><br>ORDER |

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge James P. Donohue (the "R&R"), docket no. 22, the Plaintiff's Objections thereto, docket no. 23, and the Commissioner's Response to Objections, docket no. 24. Judge Donohue's R&R recommends that the Commissioner's decision to deny Plaintiff disability benefits be affirmed. For the reasons outlined below, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the R&R, and REVERSES the Commissioner's final decision and order and REMANDS to the agency for further administrative proceedings.

//

//

//

ORDER  1–

## BACKGROUND

Plaintiff Beth Gates was born in 1954, has a high school education, and last worked in October 1999.  Tr. 159, 510.  She applied for disability benefits for the period between October 6, 2000, and December 31, 2001.

On December 20, 2005, Administrative Law Judge ("ALJ") Verrell Dethloff concluded that Ms. Gates is not disabled within the meaning of the Social Security Act, and he denied her application for disability benefits.  Tr. 12-21.  Applying the five-step sequential evaluation process for determining whether a claimant is disabled, the ALJ made the following findings, in pertinent part: Ms. Gates did not engage in substantial gainful activity during the relevant period under consideration (step 1); her severe impairments were right plantar fascial tear, iliotibial band syndrome, and obesity (step 2); these impairments did not meet or equal the criteria of any of the listed impairments (step 3); Ms. Gates retained the residual functional capacity ("RFC") to perform sedentary work; she could stand/walk 2 hours in an 8-hour workday and sit for 6 hours in a workday; she needed to avoid concentrated exposure to cold and hazards (step 4); Ms. Gates cannot return to her past relevant work (step 4); and there are significant numbers of jobs in the national economy that she can perform (step 5).  Tr. 20-21.  The ALJ also found that "[t]he claimant's statements concerning her impairments and limitations are not entirely credible."  Tr. 20.

Ms. Gates challenges the ALJ's determination that her depression and claustrophobia were not considered "severe" impairments under step 2, and contends that, as a result, the ALJ's step 3 "no listed impairments" determination and the ALJ's step 4 RFC assessment were erroneous.  She also raises four specific challenges to the ALJ's step 4 RFC assessment.

Because the Appeals Council denied Ms. Gates' request for review, Tr. 6, the ALJ's December 20, 2005 decision serves as the final decision of the Commissioner of the Social

ORDER  2–

Security Administration (the "Commissioner") for purposes of judicial review.  20 C.F.R. § 422.210.

# DISCUSSION

### Standard of Review of Commissioner's Findings

The Court must affirm a decision denying benefits if it is supported by substantial evidence and based upon correct legal standards.  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").  The R&R, at page 3, discusses this standard of review in more detail.

### Standard of Review of R&R

Under the rules that guide the Court's review of a magistrate's report and recommendation and a party's objections thereto, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

### Remand Authority

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (sentence four).

### Plaintiff's Objection I:  Psychiatric Review Technique Findings

Ms. Gates challenges the ALJ's step 2 determination that Ms. Gates' claustrophobia and depression were not "severe" impairments during the relevant insured period.  The evaluation of mental impairments requires the use of a "special technique" that is not

ORDER   3–

required for physical impairments.  See 20 C.F.R. § 404.1520a(b)-(e).  An ALJ must first evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether she has a medically determinable mental impairment.  20 C.F.R. § 404.1520a(b)(1).  If she has a medically determinable mental impairment, an ALJ must rate the degree of functional limitation resulting from the impairment in the following four broad functional areas: 1) activities of daily living, 2) social functioning, 3) concentration, persistence, or pace, and 4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3).  The first three areas are rated using a five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).  The "episodes of decompensation" area is rated using a four-point scale: none, one or two, three, four or more.  Id.  Depending on the ratings, an ALJ will conclude whether or not the mental impairment is severe.  20 C.F.R. § 404.1520a(d)(1).  For example, if the first three areas are rated "none" or "mild," and the fourth area "none," then the mental impairment is generally considered not severe.  Id.  An ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique."  20 C.F.R. § 404.1520a(e)(2).

In the present case, the ALJ relied on the findings of the state Disability Determination Service ("DDS") psychiatrist, Anita Peterson, Ph.D.  The ALJ's decision states:

> The state Disability Determination Service (DDS) has reviewed the claimant's record.  In January and June 2003 DDS psychologists determined that the claimant had a depressive disorder NOS[1] and claustrophobia, but this caused no decompensation or other difficulty other than mild limitations in daily activities. (exhibit 18F).[2]  That assessment was based on a review of salient points in the medical record (exhibit 18F:13),[3] and it is consistent with the medical reports and medical examinations of record.  This assessment is also given great weight.

---

[1] NOS stands for "Not Otherwise Specified."

[2] Exhibit 18F is referring to the Transcript at pages 440-453.

[3] Exhibit 18F:13 is referring to the Transcript at page 452.

ORDER  4–

Tr. 18. The R&R concludes that the ALJ has fulfilled the requirements of 20 C.F.R. § 404.1520a(e)(2) by incorporating by reference the DDS psychologist's psychiatric review technique. R&R at 11.

In her Objections, Ms. Gates argues that the R&R incorrectly applies 20 C.F.R. § 404.1520a(e)(2), which she argues requires an ALJ to make his own findings and conclusions. Objections at 1-3 (relying heavily on Gutierrez v. Apfel, 199 F.3d 1048 (9th Cir. 2000)). Gutierrez held that an ALJ's failure to fill out and attach a psychiatric review technique form ("PRTF") containing the ALJ's evaluation of the severity of mental impairments violated 20 C.F.R. § 404.1520a(d) and required remand. 199 F.3d at 1051 ("where there is a colorable claim of mental impairment, 20 C.F.R. § 404.1520a requires the evaluation form to be completed and appended to the decision, and the failure to do so requires remand"). Gutierrez is no longer good law, however, because it has been superceded by a regulatory change to 20 C.F.R. § 404.1520a. The regulatory change eliminates the requirement for an ALJ to fill out and attach a specified PRT form to the ALJ's decision.

A recent unpublished Ninth Circuit case discusses Gutierrez and states that "[a]mendments to § 1520a since Gutierrez have given the ALJ greater discretion in deciding how best to publish the mandated findings, but even under the amended version the regulation requires the ALJ to follow the special technique and to 'document application of the technique in the decision.'" Selassie v. Barnhart, 203 Fed. Appx. 174, 176 (9th Cir. Oct. 20, 2006) (quoting 20 C.F.R. § 404.1520a(e)). In Selassie, the Ninth Circuit reversed the district court's order upholding of the cessation of benefits because it was "undisputed that the ALJ's decision . . . [did] not include specific findings related to the four functional areas described in § 1520a(c)." Id. The Ninth Circuit noted that § 1520a(e) requires an ALJ to "include a specific finding as to the degree of limitation in each of the functional areas described." Id. (quoting 20 C.F.R. § 404.1520a(e)(2)). The Ninth Circuit rejected the

ORDER   5–

government's "harmless error" argument, stating that "[t]he specific documentation requirements . . . are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those same requirements." Id.

Unlike in Selassie, the parties in the present case dispute whether the ALJ made specific findings related to the four functional areas described in 20 C.F.R. § 404.1520a(c). The Court concludes that the ALJ made such findings. The ALJ summarized the DDS findings that Ms. Gates' depression and claustrophobia "caused no decompensation or other difficulty other than mild limitations in daily activities." Tr. 18. Put another way, the ALJ noted the DDS rating of "mild" as to "activities of daily living" and its rating of "none" as to the other 20 C.F.R. § 404.1520a(c)(3) areas (i.e., "social functioning," "concentration, persistence, or pace," and "episodes of decompensation"). Tr. 18, 450. He concluded that Ms. Gates' mental "impairments were therefore not severe." Tr. 18. The regulatory scheme for determining severity generally requires a finding of "not severe" based on these ratings "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 1520a(d)(1). Given the changes to 20 C.F.R. § 404.1520a that give the ALJ greater discretion in deciding how best to publish the mandated findings, the Court ADOPTS the R&R and REJECTS Plaintiff's Objection on this issue, and concludes that the ALJ fulfilled the requirements of 20 C.F.R. § 404.1520a(e)(2) by incorporating by reference the DDS psychologist's psychiatric review technique.[4]

**Plaintiff's Objection II:  Dr. Hakeman and Dr. McKinney**

---

[4] Although the Court concludes that the ALJ complied with 20 C.F.R. § 404.1520a(e)(2) by incorporating by reference the DDS psychologist's psychiatric review technique, the ALJ on remand may need to revise his findings under 20 C.F.R. § 404.1520a(e)(2) in light of the Court's requirement that the ALJ consider the opinions of Drs. Hakeman and McKinney as relevant to the determination of Ms. Gates' pre-expiration depression and claustrophobia. See Discussion re: Objection II; 20 C.F.R. § 404.1520a(c)(1) (requiring ALJ to consider "all relevant evidence" in assessing functional limitations).

ORDER   6–

Ms. Gates argues that the ALJ failed to provide specific and legitimate reasons for rejecting the assessments of Susan Hakeman, M.D., and Debbie McKinney, M.D., when determining that Ms. Gates' depression and claustrophobia were "not severe" mental impairments under step 2.  See Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (quoting Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.")).

Dr. Hakeman conducted a consultative psychiatric examination in July 2002, seven months after Ms. Gates' December 31, 2001 "date of last insured" or "DLI."  Tr. 425-431. The ALJ acknowledged that "Dr. Hakeman diagnosed depression NOS, situational phobia (fear of enclosed spaces), and a GAF[5] of 55."  Tr. 18.  The ALJ rejected Dr. Hakeman's report because it "was based upon an examination later than the time relevant to this matter" and because "the claimant indicated no interest in treating her claustrophobia because this was not particularly limiting in daily life."  Id.

Dr. McKinney conducted psychiatric evaluations in January and March 2003, just over one year after the date last insured.  The ALJ acknowledged that Dr. McKinney "diagnosed depression with a GAF of 50."  Tr. 18.  The ALJ rejected Dr. McKinney's GAF assessment because it was "not consistent with the medical reports and the claimant's mental

---

[5] Defendant explains the term "GAF" as follows: "A GAF of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning." Def.'s Br., docket no. 20, at 8 n.2 (citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th TR. ed. 2000) (DSM-IV-TR)). "A GAF of 60 indicates an individual with some moderate symptoms (e.g., flat affect, circumstantial speech, occasional panic attacks) or moderate difficulty in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Def.'s Br. at 9 n.3 (same citation).

ORDER  7–

examinations,"[6] and because it was "not informative with respect to the period that the claimant was insured." Id.

Ms. Gates' Objection II focuses on the ALJ's rejection of the assessments of Dr. Hakeman (as to depression and claustrophobia) and Dr. McKinney (as to depression) based on the fact that these medical evaluations were made after the expiration of Ms. Gates' December 31, 2001 date of last insured. Ninth Circuit case law is clear that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)); see also Smith, 849 F.2d at 1226 (quoting Hartman v. Bowen, 636 F. Supp. 129, 132 (N.D. Cal. 1986) (although plaintiff has to establish that disability existed prior to the expiration date she is "not confined . . . to evidence in existence prior to that date")). Defendant has conceded this statement of the law. Def.'s Br., docket no. 20, at 9.[7] The ALJ erred when he rejected the opinions of Drs. Hakeman and McKinney based on the fact that these medical evaluations were made after the expiration of Ms. Gates' date of last insured.

The ALJ also rejected Dr. Hakeman's diagnosis of claustrophobia because "the claimant indicated no interest in treating her claustrophobia because this was not particularly limiting in daily life." Tr. 18. Defendant argues that "[l]ack of treatment for mental

---

[6] This is not a "specific" reason for rejecting Dr. McKinney's assessment. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required.").

[7] The ALJ applied a post-DLI exam finding by Plaintiff's treating physician Dr. Andrews to support the ALJ's finding on a different issue and thus should have known that the opinions of Drs. Hakeman and McKinney were relevant as well. See Tr. 18 ("Although these reports [of Dr. Andrews] are several months after the date the claimant was last insured, Dr. Andrews' observations can reasonably be extrapolated to the relevant time period, and his comments are reasonable.").

ORDER   8–

conditions is a legitimate consideration in determining the severity of an alleged impairment." Def.'s Br. at 8 (citing Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)). That case, however, stands for the proposition that "[t]he ALJ is permitted to consider lack of treatment in his credibility determination" when the claimant claims impairments but has never sought treatment or evaluation. See Burch, 400 F.3d at 681. First, credibility is a different issue than severity. Second, Ms. Gates did get her claustrophobia evaluated but did not seek treatment for it because she could avoid difficult situations in her daily life. The medical evidence, including the state DDS report, see Tr. at 452, shows that she cannot *work* in a small, enclosed space. Indeed, the ALJ also ignored Dr. Hakeman's conclusion: "I do not believe that [Ms. Gates] could *work* in a small, enclosed space, such as a small movie ticket window or a tollbooth." Tr. 427 (emphasis added). Although Dr. Hakeman concluded that Ms. Gates avoids or copes with situations involving enclosed spaces in daily life that are difficult for her, see Tr. 427, 429, the Commissioner's own rules provide that "mental illness is defined and characterized by maladaptive behavior." Objections at 7 (quoting Social Security Ruling 85-15). Especially in light of the evidence in the record demonstrating a pre-expiration claustrophobic condition,[8] the ALJ erred by not providing specific and legitimate reasons for rejecting Dr. Hakeman's post-DLI diagnosis of Ms. Gates' claustrophobia.

The ALJ improperly rejected the opinions of Drs. Hakeman and McKinney regarding Ms. Gates' claustrophobia and depression. The Court DECLINES TO ADOPT the R&R and ACCEPTS Plaintiff's Objections on this issue. The Court REVERSES and REMANDS the case with instructions to the ALJ: (1) to consider the opinions of Drs. Hakeman and

---

[8] See, e.g., Dr. Hakeman's report, Tr. 430, summarizing the medical evidence regarding claustrophobia as follows: 4/18/00 Dr. Pauli examination in which Ms. Gates "reported long-standing claustrophobia" and that "her pre-existing claustrophobia could interfere with her working in small spaces" (see also Tr. 312); Dr. Andrews' references to Ms. Gates' claustrophobia and the need for follow up psychiatric opinions (see also Tr. 234-35, 353, 356, 361-62); and 9/7/01 IME "noted her claustrophobia" (see also Tr. 415-16).

ORDER 9–

McKinney as relevant to the determination of the severity of Ms. Gates' pre-expiration depression and claustrophobia even though the opinions were rendered after Ms. Gates' date of last insured; and (2) to provide specific and legitimate reasons if he rejects these examining doctors' opinions.

//

//

//

**Plaintiff's Objection III: Residual Functional Capacity ("RFC") Assessment**

The ALJ determined Ms. Gates' RFC as follows:

> At the time she was last insured, the claimant had the residual functional capacity to perform sedentary work.  She could stand/walk 2 hours in an 8-hour workday and sit for 6 hours in a workday.  She needed to avoid concentrated exposure to cold and hazards.

Tr. 21.  Plaintiff makes four objections regarding the ALJ's RFC determination.

1. <u>Claustrophobia</u>

Ms. Gates argues that the ALJ should have considered limitations on Plaintiff's RFC as a result of her claustrophobia even if the ALJ's step 2 "not severe claustrophobia" determination is affirmed.  As noted above, the ALJ on remand will be reconsidering whether Ms. Gates' claustrophobia should be considered severe in light of Dr. Hakeman's opinions.  However, even if the ALJ on remand again determines that her claustrophobia is not severe, the issue presented is whether the "total limiting effect" regulation requires the ALJ to consider limitations on Ms. Gates' RFC as a result of her claustrophobia.  The "total limiting effect" regulation provides, in pertinent part:

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of subpart P of part 404 of this chapter, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.

ORDER  10–

20 C.F.R. 416.945(e). Both Defendant and the Magistrate failed to address the "total limiting effect" issue, which Ms. Gates duly raised in her opening and reply briefs. Pl.'s Br., docket no. 19, at 13; Pl.'s Reply, docket no. 21, at 2.

The ALJ found under step 2 that Ms. Gates had "severe" right plantar fascial tear, iliotibial band syndrome, and obesity. The ALJ found under step 3 that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1. Thus, the ALJ proceeded to step 4 to determine Ms. Gates' RFC. Under 20 C.F.R. 416.945(e), the ALJ had a duty to consider the limiting effects of all Ms. Gates' impairments, even those that are not severe, in determining her RFC. More specifically, the ALJ had a duty to consider the limiting effect of her claustrophobia on her ability to work. See Celaya v. Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003) (remanding due to the ALJ's failure to determine the effect of claimant's non-severe obesity upon her "severe" impairments of diabetes and hypertension, and the effect of claimant's non-severe obesity on her ability to work and general health, given the presence of diabetes and hypertension). The ALJ failed to consider any limitations on Ms. Gates' RFC as a result of her claustrophobia. Plaintiff points out that even the state DDS evaluators, whose report is given great weight by the ALJ, found that Ms. Gates "clearly will not work in movie theater ticket booth as DVR wants her to." Tr. 452. The Court DECLINES TO ADOPT the R&R and ACCEPTS Plaintiff's Objection on this issue, and REVERSES and REMANDS for a consideration of the total limiting effect of Ms. Gates' claustrophobia in determining her RFC.

2.     Limitation on Standing/Walking to 20 Minutes Per 8-Hour Workday

The ALJ's RFC states that "[s]he could stand/walk 2 hours in an 8-hour workday and sit for 6 hours in a workday." Tr. 21. The ALJ's RFC is based on Dr. Hawley's March 28, 2001 opinion that "[i]t is unlikely she will ever be able to engage in a vocation that requires more than one to two hours of standing total in a work day." Tr. 408. Ms. Gates argues that the ALJ and the Magistrate failed to address the July 30, 2002 opinion of treating physician,

ORDER  11–

1  Dr. Andrews, which found that Ms. Gates should be limited to "up to 20 minutes total
2  standing/walking time in an eight-hour workday." Tr. 348.
3      The ALJ is responsible for resolving conflicts and ambiguities in the medical
4  testimony. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1981).  Courts "afford
5  greater weight to a treating physician's opinion because he is employed to cure and has a
6  greater opportunity to know and observe the patient as an individual." Id. at 751 (internal
7  citations and quotations omitted).  "The treating physician's opinion is not, however,
8  necessarily conclusive as to either a physical condition or the ultimate issue of disability."
9  Id.  "To reject the opinion of a treating physician which conflicts with that of an examining
10 physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so
11 that are based on substantial evidence in the record." Id.  The ALJ need not make such
12 findings, however, if "the nontreating physician relies on independent clinical findings that
13 differ from the findings of the treating physician." Id.
14     Here, the ALJ failed to make findings setting forth specific, legitimate reasons for
15 rejecting the "20 minutes" opinion of the treating physician Dr. Andrews, which conflicts
16 with the "1-2 hours" opinion of the examining physician, Dr. Hawley.  The Court
17 DECLINES TO ADOPT the R&R and ACCEPTS Plaintiff's Objection on this issue, and
18 REVERSES and REMANDS for a consideration of Dr. Andrews' "20 minutes" opinion in
19 determining Ms. Gates' RFC.
20     3.    Above Shoulder Height Reaching
21     The ALJ's RFC does not state any limitation on above shoulder height reaching.
22 Plaintiff argues that Dr. Andrews found that Plaintiff should avoid above shoulder height
23 reaching. Pl.'s Obj. at 11 (citing Tr. 206).  The Transcript Page 206 relied upon by Plaintiff,
24 however, is a vocational assessment report and refers to an "Estimate of Physical
25 Capabilities completed by Dr. Andrews on 7/13/02," which does not appear part of the
26 record.  Defendant contends that the vocational report is an error because "[a] review of Dr.

ORDER   12–

Andrews' actual response to the vocational rehabilitation inquiry reveals that no above shoulder reaching limitation was included in his assessment." Def.'s Br. at 155 (citing Tr. 348). Dr. Andrews' report at Transcript Page 348, however, is dated July 30, 2002, not July 13, 2002, and it is unclear if the "Estimate of Physical Capabilities completed by Dr. Andrews on 7/13/02" is in the record. Plaintiff has failed to point to any medical evidence, from Dr. Andrews or anyone else, regarding a limitation on above shoulder height reaching. The Court REJECTS Plaintiff's Objection on this issue and does not require the ALJ to re-evaluate a limitation on above shoulder height reaching in determining Ms. Gates' RFC.

### 4. Hand/Elbow Limitations

The ALJ states that "the claimant alleged some hand and elbow limitations, but there is no evidence to support these limitations prior to the date that she was last insured. These symptoms appeared in 2003 as a result of retraining efforts (exhibit 19F:4), and were not relevant to the issues in this case." Tr. 19. Ms. Gates argues that there is evidence to support hand and elbow limitations prior to the date she was last insured because she had hand and elbow problems in 1998 and had surgery in October 1998. Tr. 221-23. Dr. Andrews reported in 2003 that Ms. Gates had surgery for tennis elbow in 1998, and that she was experiencing a recurrence of that problem in 2003 as a result of her vocational rehabilitation that requires repetitive keyboarding. Tr. 337.

The Court ADOPTS the R&R and REJECTS Plaintiff's Objection on the hand and elbow limitation issue. The ALJ was correct in not considering the hand and elbow limitation as severe in step 2 or as a relevant impairment in determining the RFC in step 4. There is no evidence in the record that Ms. Gates suffered from any hand or elbow impairment between October 1998 and 2003, which encompasses the insured period between October 6, 2000, and December 31, 2001. Plaintiff's assertion that "had Plaintiff performed repetitive activity with her arm within her insured period, the tennis elbow would have

ORDER 13–

resurfaced earlier," Pl.'s Br. at 14, is pure speculation. Even if that statement is true, a hypothetical impairment cannot form the basis for a finding of disability.

### Plaintiff's Objection IV: Credibility

The ALJ discusses Ms. Gates' credibility in general terms as follows:

> "[T]he claimant's statements concerning her impairments and their impact on her ability to work are not entirely credible in light of information contained in the medical reports and other evidence of record."

Tr. 17. The ALJ further discusses her credibility:

> The file suggests that the claimant has a lack of motivation for anything, declining to make any effort to lose weight despite her doctor's advice (exhibits 9F:2; 10F:10; 12F:34, 14F:9), or to address her claustrophobic symptoms (exhibit 16F:3). She also has a marginal lifelong work record (exhibit 6D). These factors suggest that her continued unemployment may be related to a lack of interest and motivation in working, rather than her symptoms. (Social Security Ruling 96-7p). Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002); Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002).

Tr. 19. In Finding No. 4, the ALJ concludes that "[t]he claimant's statements concerning her impairments and limitations are not entirely credible." Tr. 20.

When evaluating a claimant's credibility, "the ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings [that a claimant's testimony is not credible] are insufficient; rather, an ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The ALJ has not specifically identified what testimony of Ms. Gates is not credible. The Court DECLINES TO ADOPT the R&R and ACCEPTS Plaintiff's Objection on this issue, and REVERSES and REMANDS for a reconsideration of the adverse credibility findings. To the extent the ALJ makes an adverse credibility finding, the ALJ is instructed to specifically identify which testimony is not credible and the facts in the record that lead to that conclusion.

## CONCLUSION

ORDER  14–

The Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the R&R, docket no. 22, and ACCEPTS IN PART and REJECTS IN PART Plaintiff's Objections, docket no. 23, as outlined above.  The Court REVERSES the Commissioner's December 20, 2005 decision, and REMANDS to the agency for further consideration and a new decision, with instructions: (1) to consider the opinions of Drs. Hakeman and McKinney as relevant to the determination of the severity of Ms. Gates' pre-expiration depression and claustrophobia even though the opinions were rendered after Ms. Gates' date of last insured; (2) to provide specific and legitimate reasons if the examining doctors' opinions are rejected; (3) to consider the total limiting effect of Ms. Gates' claustrophobia, even if still considered non-severe, in determining Ms. Gates' RFC; (4) to consider Dr. Andrews' opinion that Ms. Gates should be limited to "up to 20 minutes total standing/walking time in an eight-hour workday" in determining Ms. Gates' RFC; (5) to reconsider the adverse credibility findings and to identify specifically any testimony deemed not credible and the facts in the record that lead to that conclusion; and (6) to re-evaluate the five-step sequential process for determining disability in light of any new findings.

IT IS SO ORDERED.

DATED this 28th day of June, 2007.

Thomas S. Zilly
United States District Judge

ORDER   15–